# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOHN W. FERRON,

    **Plaintiff,**

vs.

SUBSCRIBERBASE
HOLDINGS, INC., et al.,

    **Defendants.**

Case No. 2:08-CV-760
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kemp

## OPINION AND ORDER

Plaintiff John W. Ferron brings this action against Defendants, SubscriberBase Holdings, Inc., SubscriberBase Inc., and Consumer Research Corporation ("Defendants") alleging that Defendants sent 330 emails in violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345, *et seq.*, the Ohio Electronic Mail Advertisements Act, Ohio Rev. Code § 2307.64, and Ohio Admin. Code 109:4-3-04 and 4-3-02 (2008). Plaintiff also alleges that Defendants intentionally interfered with or destroyed evidence, and seeks declaratory judgment and monetary damages. This matter is before the Court for consideration of Defendants' Motion to Dismiss pursuant to Fed R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

I.

Defendants are all South Carolina corporations operating out of Columbia, South Carolina. (Am. Compl. ¶¶ 2-4.) Plaintiff is a resident of Delaware County, Ohio. (Am. Compl. ¶ 1) Plaintiff has registered and maintains several email addresses for himself. (*Id.* at ¶ 11.) Between January 7, 2006 and July 23, 2006, Plaintiff alleges that he received 330 emails appearing to offer "free" consumer goods and services. (*Id.* at ¶¶ 16-1684.) Plaintiff also alleges

that each of these offers for "free" goods and services was contingent upon participation in another offer that was not free. (*Id.*) Plaintiff alleges that each of these offers violated the Ohio Consumer Sales Practices Act and the Ohio Electronic Mail Advertisements Act. Plaintiff also claims that, in September 2006, "the graphic images within the emails at issue were fully visible as they were still being hosted on the websites to which the emails were hyperlinked," but "[s]ince the time that Defendants gained actual knowledge about Plaintiff's claims regarding Defendants' emails, the graphic images ... have ceased being hosted by the websites to which the emails were hyperlinked." (*Id.* at ¶¶ 1687-88.) Based on these facts, Plaintiff alleges that Defendants destroyed evidence, and seeks declaratory judgment and monetary damages.

This action was initially filed in the Court of Common Pleas of Franklin County, Ohio on July 2, 2008. Defendants removed the matter to this Court on August 7, 2008. Plaintiff filed an Amended Complaint on August 29, 2008. Defendants move for dismissal of Plaintiff's claims, asserting that Plaintiff's claims are preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7707(b) ("CAN-SPAM"). Defendants also contend that Plaintiff's claim for intentional destruction of evidence should be dismissed for failure to plead the elements of the claim. Last, Defendants argue that Plaintiff's Amended Complaint should be dismissed for failure to comply with Fed. R. Civ. P. 9(b).

## II. Motion to Dismiss Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which provides that a pleading for relief shall contain "a short and plain statement showing that the pleader is entitled to relief." Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive a motion to dismiss, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Twombly*, 550 U.S. at 563. When federal law preempts a plaintiff's state law claims, a court may property dismiss such claims pursuant to Fed. R. Civ. P. 12(b)(6). *Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 394 (6th Cir. 2004).

### III. Express Preemption under CAN-SPAM

Defendants first contend that CAN-SPAM, 15 U.S.C. § 7707(b), preempts both the Ohio Consumer Sales Practices Act and Ohio Electronic Mail Advertising Act. The concept of preemption derives from the Supremacy Clause of the United States Constitution, which provides that "[t]his Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008) (citations and internal quotation marks omitted). Courts, however, apply the doctrine of preemption sparingly and are guided by "two presumptions." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). First, courts do not presume that Congress intended to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). Moreover, "there is a presumption

-3-

against the supplanting of historic state police powers by the federal government unless preemption is the clear and manifest purpose of Congress." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001) (citations and internal quotations marks omitted). Second, "[t]he purpose of Congress is the ultimate touchstone in every preemption case." *Medtronic*, 518 U.S. at 485 (citations and quotations omitted).

Given these presumptions, federal law will preempt state law only "where (1) a federal statute expressly preempts state law, (2) a federal law impliedly preempts state law, or (3) federal law and state law actually conflict." *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948-49 (6th Cir. 2002). Under the third standard, the courts will not construe state and federal law to be in conflict unless compliance with both is impossible, or if the state law is an obstacle to realizing the full purposes and objectives of Congress. *Id.* at 949 (citations and internal quotation marks omitted).

The CAN-SPAM statute provides, in relevant part:

> This chapter supersedes any statute, regulation, or rule of a State ... that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). The next section further clarifies that the Act:

> shall not be construed to preempt the applicability of (A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws relate to acts of fraud or computer crime.

15 U.S.C. § 7707(b)(2). Thus, the express language of Section 7707(b) preempts state regulation of commercial email, but excepts three types of state statutes: (1) those regulating emails that are false or deceptive, (2) those not specific to email, and (3) those that regulate fraud or computer crime.

-4-

The Court of Appeals for the Sixth Circuit has not addressed the issue of whether CAN-SPAM preempts the state laws at issue here. In *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006), the Fourth Circuit analyzed the preemptive nature of CAN-SPAM. In that case, Mummagraphics raised claims under Oklahoma law and the federal CAN-SPAM statute alleging that spam[1] email messages received from the Omega World Travel contained actionable inaccuracies. Mummagraphics asserted that Oklahoma state law, which proscribed certain unsolicited email messages, fell outside the preemptive reach of the CAN-SPAM Act. *Id.* at 353. The court interpreted the "falsity and deception" exemption, and concluded that Congress' decision to pair the terms "falsity" with "deception" indicated its intent to equate "falsity" with torts involving misrepresentations as opposed to mere errors. *Id.* The exemption, according to the court, does not apply to emails that contain isolated errors, but instead requires a showing of intentional and misleading falsity. *Id.*

The Court of Appeals also emphasized that Congress intended CAN-SPAM to provide balance between protecting a potentially effective tool for commercial advertising with preventing its abuse. *Id.* Ultimately, the court in *Omega* concluded that the emails at issue were not actionable under the Oklahoma statutes "because allowing a state to attach liability to bare immaterial error in commercial e-mails would be inconsistent with the federal Act's preemption text and structure, and, consequently, with a fair understanding of congressional purpose." *Id.* at 359 (internal quotation omitted). "Rather than banning all commercial e-mails or imposing strict liability for insignificant inaccuracies," the court found, "Congress targeted only e-mails containing something more than an isolated error." *Id.* at 355.

The Court of Appeals concluded that enforcement of laws that impose liability for

---

[1] "Spam" is a colloquial term for electronic junk mail.

immaterial errors in commercial emails would frustrate Congress' intent in enacting CAN-SPAM.

A. <u>Ohio Electronic Mail Advertisements Act</u>

Defendants maintain that Section 7707(b)(1) of CAN-SPAM expressly preempts the Ohio Electronic Mail Advertisements Act, Ohio Rev. Code § 2307.64 ("OEMAA"), because the OEMAA is not limited to regulation of commercial email that is false or deceptive. The OEMAA states, in relevant part:

> (B)(1) ... a person that transmits or causes to be transmitted to a recipient an electronic mail advertisement shall clearly and conspicuously provide to the recipient, within the body of the electronic mail advertisement, both of the following:
>
> (a) The person's *name* and complete residence or business *address* and the *electronic mail address* of the person transmitting the electronic mail advertisement;
>
> (b) A *notice* that the recipient may decline to receive from the person transmitting or causing to be transmitted the electronic mail advertisement any additional electronic mail advertisements and a detailed procedure for declining to receive any additional electronic mail advertisements at no cost. The notice shall be of the same size of type as the majority of the text of the message and shall not require that the recipient provide any information other than the receiving address.

Ohio Rev. Code § 2307.64(B)(1) (emphasis added).

As noted by another judge of this Court, in an identical case brought by the same Plaintiff, "the plain text of Ohio's EMAA creates a claim for the mere failure to include certain information in an email advertisement." *Ferron v. Echostar Satellite, LLC*, No. 2:06-cv-00453, 2008 WL 4377309 (S.D. Ohio Sept. 24, 2008) (Watson, J.).[2] Failing to include a name,

---

[2] Mr. Ferron is an attorney who lives and practices law in the state of Ohio. Ferron has filed several identical cases in this Court, varying only as to the defendants. *See, e.g., Ferron v.*

residential or business address or electronic address does not constitute "falsity" under either the Fourth Circuit standard in *Omega* or the plain meaning of the word. *See e.g.*, Black's Law Dictionary, "False" (8th ed. 2004) ("Untrue ... Deceitful; lying ... Not genuine; inauthentic").

With regard to "deception," as the word was construed in *Omega*, withholding information prior to a transaction cannot be described as "deceptive" unless: 1) the party is "under a duty to the other to exercise reasonable care to disclose the matter in question;" and 2) the disclosures are material such as to "justifiably induce the other to act or refrain from acting in a business transaction." Restatement (Second) of Torts § 551(1) (1977). In the context of spam email, withholding the sender's name, physical address, electronic address, and the opt-out notice does not constitute a nondisclosure that is so material to the transaction as to make the message deceptive, even if a statute creates a duty to disclose such information. Therefore, OEMAA cannot be said to "prohibit[] falsity or deception in any portion of a commercial electronic mail message or information attached thereto," as set forth in CAN-SPAM's preemption exemption. 15 U.S.C. § 7707(b)(1).

---

*Zoomego, Inc.*, No. 07-4007 (6th Cir. May 7, 2008), *aff'g*, No. 2:06-cv-751 (S.D. Ohio July 3, 2007); *Ferron v. e360Insight, LLC*, No. 2:07-CV-1193 (S.D. Ohio Sept. 29, 2008); *Ferron v. Echostar Satellite, LLC*, No. 2:06-cv-00453 (S.D. Ohio Sept. 24, 2008); *Ferron v. Search Cactus, LLC*, No. 2:06-cv-327 (S.D. Ohio Apr. 28, 2008); *Ferron v. VC E-Commerce Solutions, Inc.*, No. 2:06-cv-322 (S.D. Ohio Jan. 19, 2007).

In *Ferron v. Echostar Satellite, LLC*, No. 2:06-cv-00453, 2008 WL 4377309 (S.D. Ohio Sept. 24, 2008), Judge Watson thoroughly analyzed the doctrine of preemption in the context of Ferron's identical claims under the OEMAA. Judge Watson noted that, since *Omega*, nearly every district court to address preemption of state-law claims under CAN-SPAM has either followed or consulted this leading case. *Id.* at *6 (citing *Ferguson v. Quinstreet, Inc.*, No. C07-5378RJB, 2008 WL 3166307, at *8-9 (W.D.Wash. Aug. 5, 2008); *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650, at * 3 n. 1 (C.D.Cal. May 23, 2007); *Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2007 WL 1459395, at *11-12 (W.D. Wash. May 15, 2007).

-7-

B.  Ohio Consumer Sales Practices Act

Defendants also argue that sections of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345, *et seq.* ("OCSPA"), are impliedly preempted under CAN-SPAM. In support, Defendants point to Congress' intent to protect online marketers from having to comply with numerous and varied state standards. 15 U.S.C. § 7701(a)(11).

The OCSPA states:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

Ohio Rev. Code § 1345.02(A). The OCSPA is not preempted by CAN-SPAM, because it clearly regulates false or deceptive practices.

On its face, Ohio Rev. Code § 1345.02(A) regulates an "unfair or deceptive act or practice in connection with a consumer transaction." The Ohio Supreme Court has held that "the sending to and receipt by an individual of an unsolicited [commercial] fax when it is not established that the fax is unfair, deceptive, or unconscionable" is not a violation of the OCSPA. *Culbreath v. Golding Enters., LLC*, 114 Ohio St. 3d 357, 364, 872 N.E.2d 284, 291 (Ohio 2007). In the context of this case, there is no distinction between an unsolicited commercial fax and an unsolicited commercial email. Thus, both on its face and as construed by the Ohio Supreme Court, Ohio Rev. Code § 1345.02(A) regulates "false or deceptive" commercial emails.

Applying the analysis of *Mummagraphics*, 469 F.3d at 353-56, Plaintiff's claims under the OCSPA are neither expressly nor impliedly preempted under CAN-SPAM. This conclusion is also supported by the text of the preemption provision of CAN-SPAM, which prevents application of federal preemption of "[s]tate laws that are not specific to electronic mail, including State trespass, contract, or tort law." 15 U.S.C. § 7707(b)(2)(A). Because OCSPA is a

consumer protection statute, not limited to matters of electronic mail, CAN-SPAM does not preempt Ohio Revised Code § 1345.02. Defendants' argument to the contrary is wholly unsupported.

## IV. Failure to Plead Destruction of Evidence[3]

Under Ohio law, the elements of a claim for interference with or destruction of evidence are as follows:

> (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts.

*Smith v. Howard Johnson Co., Inc.*, 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037, 1038, 1993-Ohio-229. Defendants assert that Plaintiff has failed to state a valid claim for destruction of evidence because the Amended Complaint does not claim that the alleged destruction of emails was a willful act that proximately caused damages. In his Amended Complaint, Plaintiff alleges that Defendants willfully took down the websites that provided the source information for many of the unsolicited emails in order to disrupt his case; he also maintains that these actions proximately caused harm to his ability to prove his case. (Am. Compl. at ¶¶ 1701-1705.)

Federal Rule of Civil Procedure 9(b) applies to Plaintiff's claim for spoliation. Rule 9(b) is not limited to claims of common law fraud or claims which include fraud as one of the elements. Rather, the heightened pleadings requirements apply to "averments of fraud" or "claim[s] that sounds in fraud—in other words, one[s] that [are] premised upon a course of

---

[3] Defendants contend that Plaintiff's claims for destruction of evidence are derivative of Plaintiff's state law claims, which they assert are preempted by CAN-SPAM. Because the Court has found that only one of Plaintiff's claims, specifically his cause of action under OEMAA, is preempted, it need not address Defendants' assertion relating to the derivative nature of the destruction of evidence claim.

fraudulent conduct." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citations and internal quotation marks omitted).

Here, the essence of Plaintiff's spoliation claim is that "Defendants willfully ceased hosting the websites to which the 330 Emails were hyperlinked in order to disrupt Plaintiff's claims against Defendants." (Am. Compl. at ¶ 1702.) In light of Plaintiff's other claims for deceptive practices, the Court construes Plaintiff's spoliation claim as one for a fraudulent concealment of evidence, which sounds in fraud and invokes the pleadings requirement of Rule 9(b).

Federal Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[4] Rule 9(b) is read in conjunction with the "short plain statement" requirement of Rule 8. *United States* ex rel. *Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 503 (6th Cir. 2007). Rule 8 is designed to give a defendant notice of the merits of an action; similarly, Rule 9(b) is meant to provide a defendant "with a more specific form of notice as to the particulars of their alleged misconduct." *Id.* (citations omitted). Therefore, to comply with Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* at 504 (citations omitted). A plaintiff may plead fraud based "upon information and belief," but "the complaint must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Sanderson v. HCA-*

---

[4] As Judge Marbley noted, in *Ferron v. Zoomego, Inc.*, Rule 9(b) applies in cases such as this because actions for deceptive trade practices are, at their core, fraud claims. Case No. 2:06-cv-751 (S.D. Ohio 2008 July 3, 2007), *aff'd*, 276 Fed. Appx. 473 (6th Cir. 2008).

*The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006).

Plaintiff failed to plead interference with or destruction of evidence with the requisite specificity under Rule 9(b). The Amended Complaint contains no facts regarding when and why Defendants' websites were taken down. Accordingly, Plaintiff's claim is dismissed, without prejudice. Plaintiff may proceed with discovery on his spoliation claim (evidence of which would be discoverable regardless of this claim), and if substantiated by the facts discovered, may move for leave to amend the Complaint accordingly.

### V. Failure to Plead with Specificity under Fed. R. Civ. P. 9(b)

Defendants contend that Plaintiff fails to set forth a factual basis for his claims under the OCSPA because the Amended Complaint relies "upon information and belief." The Court concludes that the Plaintiff has sufficiently pleaded his consumer protection claims. Each of the 330 emails that Plaintiff describes in his Amended Complaint sets forth the approximate date which he received the email, the content of the email offering "free" goods and services, and the intent of Defendants.

Although Plaintiff has not alleged reliance on Defendants' emails or injury, the OCSPA does not require such a showing. The term "consumer transaction," means a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or an intangible ... to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345(A). In this case, the emails represent a solicitation. It is not necessary that a sale arise out of a solicitation for a plaintiff to file suit under the OCSPA. *McDonald v. Bedford Datsun*, 59 Ohio App. 3d 38, 41, 570 N.E.2d 299, 302 (8th App. Dist. Ohio 1989); *Weaver v. J.C. Penny Co., Inc.*, 53 Ohio App. 2d 165, 168, 372 N.E.2d 633, 635 (8th App. Dist. Ohio 1977) ("under the Consumer Sales Practices Act it is

not necessary that a sale actually take place before a supplier may be held liable to a consumer for deceptive acts"). Accordingly, Section 1345.02 does not require Plaintiff to allege reliance on or damages arising out of the deceptive scheme, and Plaintiff's Amended Complaint contains sufficiently detailed allegations to state a claim under the OCSPA.

## VI. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 8) is **GRANTED WITH PREJUDICE** with regard to Count Two of Plaintiff's Amended Complaint (Doc. 9), **GRANTED WITHOUT PREJUDICE** with regard to Count Three, and **DENIED** with regard to Counts One and Four.

**IT IS SO ORDERED.**

3-10-2009
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**